## Case No. 16,946.

VINCENT et al. v. The PENELOPE.

LOCKE v. The PENELOPE.

[MS.]

District Court, D. South Carolina.   Sept. 16 and 25, 1858.

### SALVOR OF VESSEL—CHARGE FOR SUPPLIES.

[The salvor of a vessel which is not derelict has no right, after the vessel has been brought into port, to provide supplies, and thereby charge the owner with the cost thereof, or create a lien upon the vessel.]

In admiralty.

MAGRATH, District Judge.   These libels have been filed in rem to subject the vessel to the maritime lien which the libellants [H. E. Vincent, E. Jordan, and B. C. Locke] claim to be entitled to, for necessary supplies furnished, by order of Eben T. Sears, alleged to have been acting as master.   In the answer, it is denied that Eben T. Sears was master, and it is insisted, therefore, that he had no authority to contract for repairs or supplies, so as to bind the owners personally, or affect the vessel with a lien.   It is not pretended that the owners ever appointed Eben T. Sears master of the Penelope.   He acted in that capacity under these circumstances.   The Penelope, during the voyage, became infected with fever.   The master and mate died.   The crew were disabled. Her signal of distress attracted the Rawlins, of which vessel Eben T. Sears was master. He bore down, went on board, undertook to navigate her; brought her into this port; joined with the owners and crew of the Rawlins in a claim for salvage, and salvage has been decreed by this court.   The Penelope was brought within the quarantine limits, where she remained, and while there, these bills for which libels have been filed, were contracted by Eben T. Sears.

Two principles of law are so well settled that they are received without dispute.   The first is that the master, by an implied authority from the owners, may bind them and the vessels by his contracts for necessary supplies and repairs.   The second is that the duties of a salvor, and therefore any authority with which he may have been invested in the salved vessel, cease, when he has brought her to a place of safety.   To have brought the vessel to a port of safety is that which entitles the salvor to his compensation.   Without this, no matter how perilous the attempt, or meritorious the service, no compensation can be claimed.   When, however, the vessel has been brought to a port of safety, the salvor is not bound to surrender absolutely that possession which he held during the salvage service, and which was involved in its discharge.   The nature of this possession is thus explained by Dr. Lushington in The Glascow Packet, 2 W. Rob. Adm. 313: "In some cases, it is true, salvors have a right to retain possession, to secure for themselves the compensation which may be due.   What is a still more important

fact (for it is the foundation upon which the salvors are allowed at any time to retain possession), there was no necessity for retaining the ship, to secure the demands upon the owners; for the ship could not by any possibility, under the circumstances, have escaped the process of the court."   In The Amethyst [Case No. 330], in the case of a derelict, the possession is thus explained by Judge Ware: "The finder of property left derelict at sea does not acquire the dominion or the absolute property in what is found.   He acquires a right of possession only, with a title to reasonable reward for his services when the property is brought to a place of safety."   And in The Bee [Id. 1,219], the rule is thus laid down, referring to a derelict: "The owner does abandon, temporarily, his right of possession, which is transferred to the finder, who becomes bound to preserve the property with good faith, and bring it to a place of safety, for the owner's use.   He is not bound to part with the possession until this is paid, or it is taken into the custody of the law, preparatory to the amount of salvage being legally ascertained."   This rule, however, is only applicable to derelicts.   When the vessel is not derelict, the absolute possession is not vested in the salvor.

During the time in which Eben T. Sears continued in the Penelope, whatever services he rendered, whether in the capacity of master or navigator, were incident to his position as salvor.   When, therefore, his duties of salvor ceased; all service which was required from him, ceased also.   If his services were continued after the salvage service ceased to be such as would be a charge upon the owners, they must have been rendered under some new arrangement with the owners, or some persons authorized to represent them.   As salvor, his duties ceased with the safe position of the vessel; and, with the duties of a salvor, all others ceased, except such as arose under such new authority.   If, during the time when the vessel was in distress, he discharged the duties of the master, that duty was the salvage service he rendered.   Its end was to bring the vessel into a port of safety, not to assume to the owners and other persons that relation which the master regularly appointed occupies.   During the time when the salvage service is being performed, a salvor may be put to great expense.   It may become his duty to procure the assistance of other salvors.   He may have to employ various agencies, and use many means to accomplish the safety of the property.   All such are considered in the amount of compensation allowed for salvage. Whatever is done, or expended for the safety of the property in danger before it reaches a place of safety is in aid of the salvage service. In these cases I do not understand that it is alleged that these supplies were at all connected with the safety of the vessel or cargo. They were procured after she was in a place of safety, when the duty of the salvor had ceased; with it, whatever authority he had exercised, as necessary for the discharge of that

duty; and when his right to the continuance of a claim to possession was itself but the means permitted to secure his lien in case of the possibility of the vessel being taken away before he could ask the aid of the court. Whatever contracts, therefore, were made by Eben T. Sears for repairs or supplies, would bind him personally, but they would not be a charge against the owners, nor out of them would a lien arise.

The cases came up to be heard on the pleadings, and, after argument, it is ordered, adjudged, and decreed that the libels be dismissed, with costs.